598 A.2d 638

**James McNEAL and Linda McNeal, Appellants,**

**v.**

**CITY OF EASTON and John A. Cappellano and James A. Singley, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1991.

Decided Oct. 22, 1991.

152

Yale E. Edeiken, for appellants.

Matthew R. Sorrentino, for appellees.

Before PALLADINO and SMITH, JJ., and BARRY, Senior Judge.

PALLADINO, Judge.

James and Linda McNeal appeal an order of the Court of Common Pleas of Northampton County (trial court) granting summary judgment in favor of John Cappellano and James Singley (Appellees).

The McNeals' amended complaint against Appellees alleges that James McNeal (Appellant) worked as a plant operator for the City of Easton (City) from 1980 to 1984, and that Appellees were his supervisors. The complaint further alleges that Appellees made Appellant a target of harrassment and ridicule by Appellant's co-workers who were supervised by Appellees. The complaint further states that Appellant was discharged by the City, through Appellees,

on October 24, 1984. The McNeals seek damages using intentional infliction of emotional distress, negligent supervision (of the co-workers), and loss of consortium, as the theories of their cause of action.

During a discovery deposition, Appellant testified that Appellees never personally made fun of him, that he never informed Appellees of the taunts of the co-workers nor that the co-workers' taunts bothered him, and that he had no basis to believe Appellees encouraged the co-workers' activity. Testimony elicited during Appellant's deposition also revealed that the reason for Appellant's termination was that Appellant went to see his personal physician during the work day when the City had granted him permission to see the City's physician.

After discovery, Appellees moved for summary judgment which the trial court granted. The trial court concluded Appellees' conduct did not constitute the willful, extreme and outrageous conduct that Pennsylvania law requires, where an intentional infliction of emotional distress claim is made.

Moreover, the trial court concluded Appellant did not establish that Appellees engaged in willful misconduct under section 8550 of the act popularly known as the Pennsylvania Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. § 8550. The trial court found that willful misconduct being absent, Appellees were immune from liability on the negligent supervision count.

Finally, having dismissed Appellant's claims for intentional infliction of emotional distress and negligent supervision, the trial court also granted summary judgment in favor of Appellees on Linda McNeal's derivative loss of consortium claim.

The McNeals appeal to this court. They argue the trial court erred by granting summary judgment on all three counts in favor of Appellees.

Summary judgment may be properly granted where the moving party has established that there is no

genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Peters Township School Authority v. United States Fidelity Guaranty Company*, 78 Pa.Commonwealth Ct. 365, 467 A.2d 904 (1983). In considering a movant's motion for summary judgment, the court must view the record in the light most favorable to the non-movant. *Pocono International Raceway, Inc. v. Pocono Produce*, 503 Pa. 80, 468 A.2d 468 (1983). Only where the pleadings, answers to interrogatories, depositions, admissions and affidavits establish that the movant's right to relief is clear and free from doubt should a court grant a summary judgment. *Peters Township School Authority;* Pa.R.C.P. No. 1035(a).

Additionally, when a motion for summary judgment is made and supported by evidence of record, the non-movant may not rest on his allegations but rather must "set forth specific facts" of record showing there is a genuine issue for trial. Pa.R.C.P. No. 1035(d). Also, on appeal of the entry of summary judgment, the appellate court may reverse the trial court where an error of law has been committed, or there is an abuse of discretion. *Peters Township School Authority.*

## I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Appellant argues that the trial court erred by granting summary judgment in favor of Appellees on Appellant's intentional infliction of emotional distress count.

Appellant's argument is predicated on this Commonwealth's recognition of the tort of intentional infliction of emotional distress. Counsel has not provided, nor has our research disclosed, any case from this court or the Supreme Court of Pennsylvania that explicitly states that the tort of intentional infliction of emotional distress exists in Pennsylvania.

However, several Pennsylvania supreme court decisions have implied that the tort does exist. *See Kazatsky v. King*

*David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987) (concluding absence of expert medical testimony that plaintiff suffers from emotional distress precludes plaintiff from recovering on intentional infliction of emotional distress theory); *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963) (concluding that defendant's conduct was neither intentional nor outrageous and was thus not actionable).

■ We also note that two reported decisions of this court have implied the existence of the tort. *See Carson v. City of Philadelphia,* 133 Pa.Commonwealth Ct. 74, 574 A.2d 1184 (1990); *Lancie v. Giles,* 132 Pa.Commonwealth Ct. 255, 572 A.2d 827 (1990) (en banc) (the latter remanding for further proceedings on plaintiff's intentional infliction of emotional distress claim). Accordingly, in the face of these precedents, this court concludes that the tort of intentional infliction of emotional distress is recognized by Pennsylvania courts.[1]

In assessing claims of intentional infliction of emotional distress, our supreme court has often referred to the Restatement of Torts for guidance. *See Kazatsky* (citing the Restatement (Second) of Torts § 46(1) (1965)); *Forster* (relying on the Restatement (First) of Torts § 46 (1948)).[2] Citing section 46(1) of the Second Restatement, the *Kazatsky* court stated "[t]he gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor." *Kazatsky,* 515 Pa. at 190, 527 A.2d at 991.

Though the *Kazatsky* court found it unnecessary to determine whether the defendant's conduct in that case constituted outrageous conduct, the decision in *Forster* was grounded in part on just such a determination. The *Forster*

1. We further note that employees of local agencies enjoy no immunity for their intentional torts. *Lancie* (intentional infliction of emotional distress allegedly committed by police officers not subject to governmental immunity).

2. This court is aware that notwithstanding these references, the Supreme Court of Pennsylvania has not expressly adopted section 46 of the Restatement (Second) of Torts as the law of this Commonwealth. *See Kazatsky,* 515 Pa. at 185 n. 1, 527 A.2d at 988 n. 1.

decision was alternatively grounded in defendant's failure to have acted intentionally in causing plaintiff emotional distress. Therefore, *Forster* provides this court with authority to evaluate on the basis of "outrageousness" and intent whether plaintiff can sustain his claim of intentional infliction of emotional distress.

In using the foregoing analysis in the instant case, this court is mindful that we are reviewing a grant of summary judgment in favor of Appellees. All inferences from the record must thus be construed in the light most favorable to Appellants. *Pocono International Raceway.* Also, pursuant to Rule of Civil Procedure 1035(d), we reiterate that if a movant has factually supported his motion for summary judgment, the non-movant may not rest on his pleadings but must cite affidavits or other evidence of record to demonstrate that there remains a genuine issue of fact for trial.

Intent has been defined as "[d]esign, resolve, or determination with which [a] person acts.... It presupposes knowledge." Black's Law Dictionary 727 (5th Ed.1979). The Restatement (Second) of Torts defines intent to denote that a party "desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965).

■ From these definitions, it is clear under the facts of this case that Appellees did not act with the requisite intent to sustain an intentional infliction of emotional distress claim. All evidence of record indicates that Appellees had no knowledge of the co-workers' conduct. Appellant himself testified at his deposition that he never told Appellees of the taunts or that the co-workers' taunts bothered him. Appellant thus did not "set forth specific facts" before either this court or the trial court demonstrating the existence of a genuine issue of fact regarding Appellees' knowledge of the taunts. Appellant has therefore not met his burden under Rule 1035(d).

Without the "presupposed knowledge" necessary to find intent, it cannot be concluded on this record that Appellees desired or were substantially certain that their failure to intervene would result in harm to Appellant. Accordingly, the trial court properly concluded that the evidence of record, even construed in a light most favorable to the McNeals, could not sustain their intentional infliction of emotional distress claim.

■ Moreover, as in *Forster*, this court alternatively concludes Appellees' conduct in this case was not outrageous. The term "outrageous" as used in the intentional infliction of emotional distress context is not easily defined. Nevertheless, three factors militate against such a conclusion in this case.

First, the evidence of record is undisputed that Appellant never informed Appellees of the taunts. Thus, without knowledge of the co-workers' conduct, Appellees' "failure" to prevent such conduct can hardly be considered an "act[ ] of an especially flagrant character," *Forster*, 410 Pa. at 200, 189 A.2d at 152, that would permit an intentional infliction of emotional distress cause of action.

Second, the outrageous conduct at issue in this case, if any, is principally that of the co-workers. It was their affirmative conduct and, as Appellant testified, not Appellees' that has allegedly caused Appellant's distress. We decline to conclude Appellees' conduct is outrageous even if the conduct of the co-workers might have been.

Third, looking, as the *Forster* court did, at the examples cited in section 46 of the Restatement (Second) of Torts, this court concludes examples 4, 8, and 13 most closely resemble the facts of this case. Those examples collectively stand for the proposition that "liability clearly does not extend to mere insults, indignities, threats, [or] annoyances." Restatement (Second) of Torts § 46 (1965).[3] Rather, "outragousness" requires more.

3. Example 13, for example, states:

We conclude the trial court properly granted summary judgment in favor of Appellees on the intentional infliction of emotional distress count.

## II. NEGLIGENT SUPERVISION

■ Appellant's negligent supervision count can be maintained only if Appellant can nullify Appellees' governmental immunity. Generally, under section 8545 of the Act, 42 Pa.C.S. § 8545, an employee of a local agency enjoys immunity co-extensive with that of the local agency.

Appellant, however, argues that under the facts of this case, section 8550 of the Act applies. That section provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted ... willful misconduct, the [official immunity] provisions ... shall not apply.

Appellant argued before the trial court and argues on this appeal that the Appellees' acts constitute "willful misconduct" under section 8550. We disagree.

A finding of "willful misconduct" under section 8550 requires a party to have acted with even more than gross negligence or recklessness. *Scott v. Willis*, 116 Pa.Commonwealth Ct. 327, 543 A.2d 165 (1988). Our supreme court has stated:

> [W]ilful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue. This, of course, would necessarily entail actual prior knowledge of the [harm].

*Evans v. Philadelphia Transportation Company*, 418 Pa. 567, 574, 212 A.2d 440, 443 (1965); *see also Williams v.*

---

. ˙ A is an otherwise normal girl who is a little overweight, and is quite sensitive about it. Knowing this, B tells A that she looks like a hippopotamus. This causes A to become embarrassed and angry. She broods over the incident, and is made ill. B is not liable to A. Restatement (Second) of Torts § 46 (1965).

*City of Philadelphia,* 131 Pa.Commonwealth Ct. 71, 569 A.2d 419 (1990) (relying on *Evans* standard in addressing question of willful misconduct under section 8550).

The willful misconduct inquiry is similar to the intent inquiry on Appellant's intentional infliction of emotional distress count. Here, as there, this court notes that Appellant has set forth no specific facts pursuant to Rule 1035(d) suggesting Appellees had knowledge that Appellant was harmed by the co-workers' taunts, or even knowledge that the taunts existed. Appellant testified that he never told Appellees of the taunts, and that Appellees never personally bothered him.

Accordingly, the trial court properly found that Appellees' actions were at most neglectful. "That neglect ... does not rise to the test of willfulness under the law." Trial Court Opinion of September 13, 1990, at 10. Appellees remain protected by the immunity granted by section 8545 of the Act. The trial court's grant of summary judgment on the negligent supervision count in favor of Appellees was proper.

### III.   LOSS OF CONSORTIUM

■   In order to recover under a loss of consortium theory, a party must show the defendant is liable to his or her spouse. *Kowal v. Department of Transportation,* 100 Pa.Commonwealth Ct. 593, 515 A.2d 116 (1986), *petition for allowance of appeal denied,* 514 Pa. 649, 524 A.2d 496 (1987). This court having concluded Appellant's first two claims were properly dismissed, we also affirm the trial court's grant of summary judgment in favor of Appellees on Linda McNeal's loss of consortium claim.

Accordingly, we affirm the order of the trial court granting summary judgment in favor of Appellees.

### ORDER

AND NOW, October 22, 1991, the September 13, 1990 order of the Court of Common Pleas of Northampton County in the above-captioned matter is affirmed.