623 A.2d 845

**William FLETCHER, Appellant,**

v.

**The RAYMOND CORPORATION and F.J. Schindler Equipment, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1992.

Filed April 21, 1993.

606

Eric Bush, Philadelphia, for appellant.

Francis P. Burns, III, Philadelphia, for appellees.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

WIEAND, Judge:

William Fletcher, an employee of Kiddie City, was injured when he fell from the fork of a forklift truck on which he was riding as he returned to work after a lunch break. In an

action against the manufacturer of the forklift, The Raymond Corporation, and its distributor, F.J. Schindler Equipment Co., for failing to give adequate warnings of the dangers inherent in riding on the forks of a forklift, the trial court entered summary judgment in favor of the defendants. From this order the plaintiff filed the present appeal. After careful review, we affirm.

Fletcher was hired in the fall of 1981 by Kiddie City to work in its warehouse during the Christmas season. His duties required, inter alia, that he operate a forklift. On the night of October 31, 1981, after completing a meal break, Fletcher and three other employees climbed onto the forks of the forklift for the ride back to the area in which they were working. Fletcher was standing with Patrick Smith on one fork, while the other two employees were on the other fork. Smith, who was closest to the operator, had grasped the truck mast for support, while Fletcher, who was standing near the top of the fork, facing the operator, held onto Smith's shoulder for support. Thus, only his feet were in contact with the moving truck. When the truck shook, as if it had struck a pothole, Fletcher lost his balance and stumbled off the machine. His depositions disclose, however, that he landed on his feet with "perfect balance." Unfortunately, as Fletcher attempted to remount the moving forklift, a truck wheel came into contact with his foot and knocked him down. The truck then ran over his foot and lower leg, causing injuries which resulted in the amputation of his leg below the knee.

The two forklifts in operation in the Kiddie City warehouse had been sold in 1977. At the time of manufacture the forklifts were equipped with two warning decals. One decal (6¾" by 3¾", black letters on green background) was at the operator's station, affixed to the operator's console. It was entitled "Safety First" and contained nine separate warnings. The first of these was "NO RIDERS PERMITTED," and the last was "READ AND UNDERSTAND OPERATOR'S MANUAL BEFORE OPERATING." A second decal had been affixed by the manufacturer to the load backrest which was bolted to the front of the truck and which provided additional

support for high palletized loads. This decal contained the words "NO RIDING" in black letters, one and one-half inches in height, on a green background. On one of the forklifts operated at Kiddie City, however, the load backrest, with the attached decal, had been removed following manufacture and sale.

A final warning decal had been placed on the Raymond forklifts in 1977 by dealers at the instruction of the manufacturer. This warning, placed in the operator's compartment, was entitled, "WARNING—FOR YOUR SAFETY AND THE SAFETY OF OTHERS." The warning was six (6″) inches by eight (8″) inches and consisted of red letters on a metallic background. It provided, inter alia, "DO NOT CARRY PASSENGERS."

Despite these warnings, Fletcher admits that he and other employees of Kiddie City routinely rode around the warehouse on the forks of the forklift trucks. At times, in fact, as many as seven (7) would ride on the forks by holding on to each other's arms and shoulders. Although Fletcher had operated both forklifts, he testified that he did not take notice of the warning decals.

After extensive discovery, the defendants filed a motion for summary judgment, and when plaintiff failed to file a timely response, the trial court treated the motion as uncontested and entered summary judgment in favor of defendants. This order was subsequently vacated, and plaintiff was granted additional time to respond. When he again failed to respond, the trial court took up the matter once again as an uncontested motion. However, the court's order was based, not on plaintiff's default, but upon the lack of merit in his alleged cause of action.

A motion for summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In passing upon a motion for summary judgment, a court must examine the record in a light most favorable to the nonmoving party and must resolve all doubt against the

moving party. *Mariscotti v. Tinari,* 335 Pa.Super. 599, 601, 485 A.2d 56, 57 (1984); *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140–141, 476 A.2d 928, 930–931 (1984).

 There is no genuine issue of material fact in this case. Whether plaintiff was attempting to remount the forklift when he was injured, as plaintiff testified, or whether he was only thinking about it when struck, as an expert opined in attempting to reconstruct the accident, is not a material difference. It does not prevent the entry of summary judgment if defendants are otherwise entitled thereto as a matter of law. The trial court, thus, did not err when it accepted plaintiff's testimony. Indeed, it is now settled that a party's witness cannot extricate the party from the position in which the party has placed himself by his own testimony. *Scull v. Epstein,* 167 Pa.Super. 575, 579, 76 A.2d 245, 246 (1950); *Roche v. Pennsylvania Railroad Co.,* 169 Pa.Super. 48, 56, 82 A.2d 332, 336 (1951).

 In order to recover on a theory of strict products liability, it must be shown that (1) the product was defective when it left the hands of the manufacturer, and (2) the defect was a proximate cause of plaintiff's injury. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 93–94, 337 A.2d 893, 898 (1975); *Foley v. Clark Equipment Co.,* 361 Pa.Super. 599, 605–606, 523 A.2d 379, 382 (1987); *Carrecter v. Colson Equipment Co.,* 346 Pa.Super. 95, 100, 499 A.2d 326, 329 (1985). A product may be deemed defective if it lacks adequate warnings or instructions necessary for safe use of the product. *Walton v. Avco Corp.,* 530 Pa. 568, 576, 610 A.2d 454, 458 (1992); *Mackowick v. Westinghouse Electric Corp.,* 525 Pa. 52, 56, 575 A.2d 100, 102 (1990). The duty to warn, however, does not require a manufacturer to educate and instruct a novice in the principles of the product's operation. *Mackowick v. Westinghouse Electric Corp., supra* at 56, 575 A.2d at 102. It also does not require that a manufacturer warn of obvious dangers which are generally known and recognized. *Sherk v. Daisy–Heddon,* 498 Pa. 594, 600, 450 A.2d 615, 618 (1982); *Mucowski v. Clark,* 404 Pa.Super. 197, 203, 590 A.2d 348, 351 (1991). "A warning of inherent dangers is sufficient if it adequately

notifies the intended user of the unobvious dangers inherent in the product." *Mackowick v. Westinghouse Electric Corp., supra* 525 Pa. at 56, 575 A.2d at 102. As the court stated in *Hon v. Stroh Brewery Company,* 835 F.2d 510 (3rd Cir.1987):

> [A] ... manufacturer may assume that users or consumers will possess the common knowledge of the community. It must therefore warn only of latent risks. *Overpeck v. Chicago Pneumatic Tool Co.,* 823 F.2d 751, 754 (3d Cir. 1987) (applying Pennsylvania law); *Conti v. Ford Motor Co.,* 743 F.2d 195 (3d Cir.1984) (applying Pennsylvania law). If the product's risks "w[ere] known or should have been known to the user, liability cannot be imposed upon the manufacturer merely because the manufacturer has failed to warn of that propensity." *Sherk v. Daisy–Heddon, Div. of Victor Comptometer Corp.,* 498 Pa. 594, 450 A.2d 615, 618 (1982).

*Id.* at 513. See also: *Brown v. Caterpillar Tractor Co.,* 741 F.2d 656, 661 (3d Cir.1984).

 Whether a product is defective because of a failure to give an adequate warning is initially a question of law to be decided by the trial court. *Mackowick v. Westinghouse Corp., supra* 525 Pa. at 56, 575 A.2d at 102. See also: *Azzarello v. Black Bros.,* 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978). Assuming, without deciding in the instant case, that the manufacturer of a forklift truck can be required to warn users of the dangers inherent in falling from or jumping on a moving vehicle, it is eminently clear that that responsibility was met in this case. "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts, § 402A, comment j.

 In the instant case, moreover, it was not appellant's riding the fork alone which caused his injury. It was, rather, his failure to hold onto the vehicle which caused him to lose his balance and fall from the fork. This was a risk so well known that it did not require an additional, specific warning.

612

■ Appellant contends finally that a jury could have found appellees negligent because they failed to provide him with a course training him to operate a forklift and because they failed to collect and document accident data for incorporation into the design of their vehicle. However, we find it unnecessary to consider these averments of fault. It is clear that the omissions of appellees in these regards were not the proximate cause of plaintiff's fall. See: *Sherk v. Daisy–Heddon, supra; Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 527 A.2d 140 (1987); *Conti v. Ford Motor Co., supra.*

AFFIRMED.